UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **CHARLES CRUSE,** | **CIVIL ACTION NO. 5:17-290-KKC** |
| **Plaintiff,** | |
| **V.** | **ORDER AND OPINION** |
| **SCHNEIDER ELECTRIC USA, INC.,** | |
| **Defendant.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on a motion for summary judgment filed by Defendant Schneider Electric USA, Inc. [DE 33.] For the reasons stated below, the Defendant's motion for summary judgment is **GRANTED**.

## BACKGROUND

### I.

Plaintiff Charles "Tommy" Cruse has been employed by Schneider Electric USA, Inc. for over 40 years. A nationwide company, Schneider Electric specializes in the manufacture of electrical transmission equipment. Its Lexington plant, which employs Cruse and hundreds of others, assembles safety switches and breaker boxes. [DE 33-1, at 3.] Schneider Electric's Lexington employees are represented by the International Brotherhood of Electric Workers, Local 220 Union ("the Union").

Cruse began his tenure with Schneider Electric in 1976 as a Paint Line Conveyer. In 1981, Schneider Electric promoted him to the position of "Leader" on the welding line. [DE

39, at 3.] Schneider occupied this Leader position until his demotion in October of 2015. [DE 1, at 2.] It is this demotion that brings the parties before the Court.

In February of 2005, Cruse began to experience dizziness and loss of hearing while on the job. [DE 33-3, at 16.] Cruse reported these symptoms to Pamela Macy, an HR Representative in Schneider Electric's Lexington facility. [DE 33-3, at 16.] Macy then instructed Cruse to go see a physician. [DE 33-5, at 3.] Company nurse Eva Elam was the only other Schneider Electric employee present for this conversation. [DE 33-5, at 3.]

On the advice of Macy, Cruse went to go see Dr. Kenneth Hughes, an ENT specialist. [DE 33-9, at 2.] Dr. Hughes diagnosed Cruse with profound hearing loss in his left ear, disequilibrium, vertigo, and eustachian tube dysfunction. [DE 33-9, at 3.] Eustachian tube disfunction is the medical term for the buildup of fluid in one's ear canal. With the approval of Schneider Electric, Cruse took a medical leave of absence from February 21, through August 29, 2005. While on leave, Cruise underwent outpatient physical therapy. [DE 33, at 10.]

Cruse returned to Schneider Electric in August of 2005 without any documented restrictions. [DE 39, at 4.] Moreover, Cruse did not explicitly request any accommodations. [DE 33-3, at 80.] Nevertheless, Cruse maintains that he continued to experience symptoms of dizziness and vertigo. [DE 33-3, at 10.]

As part of its OSHA compliance, Schneider Electric provides hearing examinations for all its Lexington production employees. [33-14, at 3.] These examinations take place every one-to-two years and are performed by audiologists provided directly by Schneider or through a third-party vendor. [33-14, at 3.] The results of these hearing exams are disclosed only with the examinee and the Safety Manager of the Lexington facility. [DE 33-4, at 3.]

The record reveals that Cruse's hearing was examined several times between 1976 and 2015—the year Cruse was demoted. [DE 33-4, at 9-44.] Every examination in this period

indicated a hearing impairment in Cruse's left ear, but the degree of impairment varied. For example, in 2014 Cruse experienced a total impairment of 18.8% in his left hear. This number jumped to 43.1% 2015 and then returned to 28.1% in 2017. [DE 33-14, at 4.] Cruse also stipulated that he never sought an outside opinion regarding his left ear and he was never tested for a hearing aid. [DE 33-3, at 7-9.]

## II.

Starting in 2013, Schneider Electric implemented a probationary program for Lexington Leaders failing to meet performance goals. [DE 33-4, at 3.] Pursuant to the program, an underperforming Leader was placed on probation for approximately 60 days. However, when necessary, the probationary period was extended for another 30 days. [DE 33-4, at 3.] During probation, the Leader was required to attend progress meetings at the 30- and 60-day marks. If the probationary period was extended to 90 days, a progress meeting was also held at the 90-day mark. Progress meetings were traditionally attended by the Leader, his or her Supervising Manager, the Lexington Manufacturing Manager, and representatives from both Human Resources and the Union. At the end of the probationary period, Leaders either retained their position or, pursuant to the collective bargaining agreement, returned to the post held immediately before their promotion to Leader. [DE 33-4, at 3.]

From the inception of the probationary program in 2013 through Cruse's EEOC filing in March of 2016, five Leaders were placed on probation. [DE 33-4, at 3.] This group was comprised of Cruse (then age 57), Brandi Hayes (then age 32), Josue Lamartiniere (then age 40), Ianthia Baker (then age 56), and Robert McLachlan (then age 48). Of the five Leaders who were placed on probation, only two were demoted: Cruse and Robert McLachlan. Like Cruse, McLachlan was demoted shortly after completing a probationary period. His demotion came as a result of using profanity in a meeting with superiors. [DE 33-4, at 4.] Nothing in

the record suggests that the Leaders placed on probation, other than Cruse, suffered from a disability or required accommodation.

## III.

On June 25, 2014, then Supervising Manager Nicole Licursi issued a written reprimand to Cruse [DE 33-5, at 11.] Licursi claimed that Cruse had deliberately ignored her repeated requests to remove objects from the plant floor. Cruse, however, maintains that he simply did not hear Licursi's demands. [DE 39, at 6.]

As it turns out, the day Cruse received this reprimand, he was already scheduled for a meeting with Schneider Electric management. The purpose of the scheduled meeting was to inform Cruse that he was being placed on the Leader probation program. The record conclusively indicates that Cruse was going to be placed on probation irrespective of the incident earlier in the day. [DE 33-5, at 5.] In fact, Cruse's reprimand was never discussed during the June 25th meeting.

Cruse's June 25th initial probation meeting was attended by Cruse, Nicole Licursi (Supervising Manager), Pamela Macy (HR Representative), Jeff Board (Union President), Donna Mullins (Union Steward), and Teresa Caldwell (Union Recording Secretary). At the outset, Licursi notified Cruse that he was being placed on probation. [DE 33-5, at 5.] Licardi further explained that Schneider Electric expected Cruse to improve in four key areas: (1) safety; (2) efficiency; (3) reaction to instruction from superiors; and (4) communication.

On July 27, 2015, Schneider Electric conducted Cruse's 30-day progress meeting. By this point in time, Licursi had stepped down from her role as Supervising Manager. Before her departure, however, Licursi emailed the Manufacturing Manager at the time, Brian Hilander, and conveyed to him that she was "pleased with the progress [Cruse] has made and the direction welding is in." [DE 33-5, at 18.] The progress meeting was attended by Cruse, Pamela Macy (HR Representative), Jeff Board (Union President), and Teresa Caldwell

(Union Recording Secretary). [Ex. 13.] Cruse's reviews at this meeting were all positive and Licursi's email was read aloud. Near the end of the meeting, Union President Jeff Board noted that Cruse had a hearing problem that "the company knew about." [DE 33-15, at 56.] Cruse chimed in, proclaiming that the hearing in his left ear was "about 55%." However, Cruse went on to say that did not want to use his hearing in his left ear as a "crutch." [DE 33-15, at 56.]

On August 25, 2015, Schneider Electric convened Cruse's 60-day progress meeting. Prior to this meeting, Schneider Electric had hired Susan Savard to replace Licursi as Supervising Manager. As such, Savard was the one who reviewed Cruse's performance from July 27, 2015 up until the second progress meeting, which was attended by Cruse, Savard (Supervising Manager), Lee Turner (Manufacturing Manager), Jeff Board (Union president), and Teresa Caldwell (Union Recording Secretary). Over the course of the meeting, Savard explained to Cruse that he still had room for improvement when it came to efficiency and communication. [DE 33-15, at 60.] Moreover, Savard tacked on another 30-day period to Cruse's probation. Savard reasoned that as a new Supervising Manager, she was still learning the process. [DE 33-15, at 42.]

Following Cruse's 60-day progress meeting, Savard and Cruse met on multiple occasions to discuss ongoing communication issues. [DE 33-3, at 40-41.] On September 2, 2015, the two discussed an incident where, because of a lack of communication by Cruse, an overtime shift was overstaffed and another employee had to be sent home. [DE 33-7, at 3.] Savard and Cruse had another conversation on September 4, 2015. During this exchange, the two discussed Cruse's attitude and the efficiency of the welding line. [DE 33-7, at 4.] Savard and Cruse again spoke on September 11, 2015. Savard's notes from this meeting indicate that the two conferred regarding Cruse's attitude and its negative impact on the production line.

On September 23, 2015, Schneider Electric conducted Cruse's 90-day progress meeting. [DE 33-4, at 57.] The attendees at this meeting included Cruse, Jeff Board (Union President), Lee Evans (Union Steward), Lee Turner (Manufacturing Manager), Pamela Macy (HR Representative), Susan Savard (Supervising Manager), and Teresa Caldwell (Union Secretary). During the meeting, Savard informed Cruse that his performance and communication were still unsatisfactory. Savard specifically pointed out that the welding line was more efficient in his absence and noted that Cruse tended to be "argumentative." [DE 33-4, at 56.] Cruse was notified that a decision regarding his employment status would soon be decided. Then the meeting adjourned.

As promised, Schneider Electric summoned Cruse on September 25, 2015. The following individuals were present at this follow-up meeting: Cruse, Jeff Board (Union President), Pamela Macy (HR Representative, Loui Barnes (Union Steward), Susan Savard (Supervising Manager), Lee Turner (Manufacturing Manager), and Teresa Caldwell (Union Recording Secretary). [DE 33-4, at 67.] Cruse was informed that he would retain his position as a Leader, but was warned that he would not be eligible for any more probation periods. [DE 33-16, at 7.] Management provided encouragement to Cruse telling him that "everyone in here" was behind him and that they wanted him to "knock it out of the park." [DE 33-16, at 8.] Cruse was released back to the welding line to perform his leadership role.

## IV.

On October 8, 2015, tensions on the production line boiled over. There had been complaints that day that Cruse had failed to adequately notify the final production line that his welding unit had halted activity. Instead of notifying both final line Leaders, Janet Vice and Jason Rodriguez, Cruse only passed along the message to Vice. [DE 35-5, at 6.] Seeking to address the issue, Savard, the Supervising Manager, called for a team meeting in her back office.

Present at the back-office meeting were Cruse, his wife Gayle (production employee), Savard (Supervising Manager), Janet Vice (final line Leader), Jason Rodriguez (final line Leader), Kerry Gearhart (production employee), and an individual named "Jim." [DE 33-7, at 22.] The meeting was further observed by back-office employees whose desk stations were nearby. [DE 33-5, at 35.] These individuals included Alexandra Walker, Saket Fadnavis, Guy Cornish, and Jasmine Kelley.

The nature of the October 8, 2015 meeting is disputed by the parties. Cruse claims that his behavior was docile and that any loudness on his part was the result of a hearing impairment in his left hear. [DE 33-3, at 51-61.] Savard, however, claimed that when confronted with his lack of communication on the production line, Cruse became irate and aggressive. So much so that Savard had to beckon Donna Mullins, a Union Steward, to the back-office meeting. The parties do agree, however, that the back-office meeting ended when Cruse got up and walked away from the table.

Later that day, a follow-up meeting was held in the HR office suite to discuss what had occurred in earlier Savard's office. [DE 33-6, at 5.] The meeting was attended by Cruse, Savard (Supervising Manager), Lee Turner (Manufacturing Manager), Jeff Board (Union President), Louie Barnes (Union Steward), Pamela Macy (HR Representative), and Teresa Caldwell (Union Recording Secretary). When Savard asserted that Cruse's earlier behavior was inappropriate, the Union came to his defense. [DE 33-5, at 31.] Jeff Board, the Union President, asserted that Savard's back-office meeting was provocative and should not have been called in the first place. Schneider Electric management then informed those present that it would be taking witness statements. The Union representatives responded, noting that they would be conducting their own set of witness interviews. No decision regarding Cruse was made at this time. [DE 33-6, at 5.]

Schneider Electric obtained written statements from Alexandra Walker, Saket Fadnavis, Guy Cornish, and Jasmine Kelley. [DE 33-6, at 5.] Although they did not participate in the meeting, these employees observed the happenings from their desk stations. Alexandra Walker, a materials analyst at the time, recalled that Cruse was "very upset" and "interrupting everyone." [DE 33-17, at 6.] Walker further observed that Cruse was "getting loud" and "out of control." Lastly, she maintained that cruse was "obnoxiously talking over everyone." [DE 33-17, at 6.]

Saket Fadnavis, a materials engineer, characterized the back-office interaction as "hot and loud." [DE 33-18, at 5.] Guy Cornish, a manufacturing engineer, described the event as a "heated discussion." [DE 33-19, at 5.] Jasmine Kelley, a Supervisor, observed that Cruse "was being excessively loud while arguing with Jason" and displayed a "belligerent attitude." [DE 33-20, at 5.]

Union representatives Jeff Board and Teresa Caldwell interviewed Donna Mullins (Union Steward), Kerry Gearhart (production employee), Janet Vice (final line Leader), Jason Rodriguez (Final Line Leader), and an individual named "Jim." [DE 33-15, at 71.] Donna Mullins recalled that Cruse was "irate" and "louder than anyone there." [DE 33-15, at 71.] Mullins also noted that she and Susan Savard had to scream multiple times to restore the meeting back to order. [DE 33-15, at 71.] Janet Vice claimed that Cruse was "getting loud" and was "way out of line." [DE 33-15, at 72.] Jason Rodriguez observed that Cruse was "putting people down," "getting loud," and "pointing fingers." [DE 33-15, at 73.] Kerry Gearhart told somewhat of a different story. He claimed that the impromptu meeting was "handled wrong" and no one in the meeting "got irate." [DE 33-15, at 72.] Gearhart further observed that Union Steward Donna Mullins was the only individual in the meeting who was yelling. [DE 33-15, at 72.]

After reviewing the witness statements, Manufacturing Manager Lee Turner decided to demote Cruse. [DE 33-6, at 5.] In making this decision, Turner recalls that it was his opinion that Cruse was no longer fit for a leadership position at Schneider Electric. And, Turner's affidavit reveals that at the time of the decision, he had no knowledge of Cruse's alleged hearing impairment. Turner's decision was communicated to Cruse in a later meeting on October 8, 2015.

V.

In the six months following Cruse's demotion, his responsibilities were absorbed by Lanny Lyon, who was already a Leader for another welding line shift. [DE 33-6, at 6.] It was Turner's hope that the welding line could properly function without having to hire another Leader. At about the six-month mark, however, Turner realized that the cure was insufficient and hired a replacement for Cruse—Mitchell Asbury. At the time of his hiring, Asbury was 31 years old. [DE 33-6, at 6.]

Cruse cross-filed a charge of discrimination with the Equal Employment Opportunities Commission ("EEOC") and the Kentucky Human Rights Commission ("KHRC") on March 14, 2016. The EEOC rejected his claim and issued a right to sue letter on July 6, 2018. [DE 33-4, at 7.] Cruse then filed this action on July 12, 2018. [DE 1.] According to Cruse, Schneider Electric demoted him not because of the October 8, 2018 meeting, but rather because of his age and hearing impairment. The Complaint asserts violations of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Kentucky Civil Rights Act ("KCRA"). [DE 1.]

**ANALYSIS**

Defendant Schneider Electric has now moved for summary judgment pursuant to Fed. Rule Civ. P. 56. The Company argues that Plaintiff Cruse fails to establish a prima facie case of discrimination under the ADA, ADEA, and KCRA. Because Cruse has failed to establish

the elements of his causes of action, Schneider Electric Argues, there is not genuine dispute of material fact and the matter is ripe for dismissal on summary judgment. For the reasons set forth below, the Defendant's motion for summary judgment [DE 33] is **GRANTED** in full.

## I.    Standard of Review

A moving party is entitled to summary judgment pursuant to Fed. R. of Civ. P. 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment must be entered if, "after adequate opportunity for discovery," a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 940 (6th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted)).

The initial burden is on the moving party. *Cox v. Ky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). To meet its burden, "the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the jury." 53 F.3d at 149.

Once the moving party satisfies its burden, "the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury." *Id.* at 150. To carry this burden, "[t]he nonmoving party must provide more than a scintilla of evidence," or, in other words, "sufficient evidence to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## II.    Cruse's Age Discrimination Claims

Cruse, then age 57, asserts that he was demoted from his Leader position at Schneider Electric because of his advanced age—a violation of both the ADEA and the KCRA. Defendant

Schneider Electric, on the other hand, maintains that Cruse fails to satisfy the requisite elements of both claims. The Court agrees. Cruse has not adequately plead his age discrimination claims pursuant to the ADEA and KRCA.

Under both the ADEA, 29 U.S.C. § 623, and the KCRA, KRS. § 344.040(1), employers are prohibited from discriminating against any employee with respect to "compensation, terms, conditions, or privileges of employment because of that individual's age." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393–94 (6th Cir. 2008). Actions brought under the KCRA are "analyzed in the same manner" as ADEA claims. *Williams v. Tyco Elec. Corp.*, 161 Fed.Appx. 526, 531 & n.3 (6th Cir. 2006); *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky.1984) (explaining that because the Kentucky statute is specially modeled after the federal law, courts must apply federal caselaw to a plaintiff's KCRA claim).

Where, as here, the plaintiff fails to present direct evidence of age discrimination, the claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). Pursuant to *McDonnell Douglas*, once the plaintiff presents a prima facie case of age discrimination, the defendant must "articulate some legitimate, nondiscriminatory reason" for the termination. 411 U.S. 792, 802 (1973). If the defendant satisfies this requirement, the "burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003).

To establish a prima facie case of age discrimination, Cruse must show: (1) that he is a member of a protected group (40 years of age or older); (2) his qualification for the Leader position; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).

Because he was 57 years old at the time of his demotion, Cruse easily satisfies the first prong of the analysis. That said, he proceeds on shakier grounds for the rest of the required elements. As for Cruse's qualification for the Leader position, the Sixth Circuit has held that a defendant must show that "he met his employer's legitimate expectations at the time of termination." *Webb v. ServiceMaster BSC LLC*, 438 F. App'x 451, 453 (6th Cir. 2011). Cruse appears to argue that because he held the Leader position for over 30 years, he easily satisfies the qualification element. [DE 39, at 11.] Cruse's argument, however, is unpersuasive.

The fact that Cruse met Schneider Electric's expectations in the past, does not necessarily mean he was doing so at the time of his demotion. *See Webb*, 438 F. App'x at 453 (finding that past performance reviews were "stale" and did not establish plaintiff's qualifications at the time of termination). The evidence of record establishes the following. First, Cruse was placed on Schneider Electric's probationary program for Leaders. The Company did so because Cruse was *not* meeting its goals and expectations. The record specifically reveals that between June 1 and October 8, 2015, Cruse's welding line only met its daily output goal three times. [DE 33-6, 14-16.] Second, the very same day Cruse was to be placed on probation, he received a write up for insubordination. The Court therefore finds that neither Cruse, nor the record, indicates that he was meeting Schneider Electric's legitimate expectations at the time of his demotion. As a result, Cruse's age discrimination claims under the ADEA and KCRA must fail

Irrespective of Cruse's failure to establish his qualification for the Leader position, the Court will proceed to analyze the rest of the necessary elements of his age discrimination claims. As to the third element, Cruse asserts that he suffered multiple adverse actions at the hands of Schneider Electric. These include his written reprimand, Leader probation period, and eventual demotion. [DE 39, at 11.] In reviewing the record, the Court finds that

Cruse suffered only one adverse action: his demotion from the Leader position on October 8, 2015.

The Sixth Circuit has noted that an adverse employment action is one that materially changes the terms and conditions of the plaintiff's employment," *Hollins v. Atl. Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999). Cruse's written reprimand and 90-day probation did not materially alter the terms of his employment. They, for one, did not lower his pay. And, neither demerit directly impacted his employment standing. In fact, following his write up and probation, Cruse was able to retain his Leader position. Though his ego may have been bruised, his pay and formal status within the company were unaffected. Conversely, Cruse's eventual demotion from the Leader position did materially alter the conditions of his employment. Most notably, his pay was reduced from $25.43 per hour to $22.78 per hour. [DE 39, at 8.] In sum, the Court finds that Cruse's demotion—and only his demotion— satisfies the third element of his age discrimination claims.

To satisfy the fourth and final element of his age discrimination claims, Cruse must demonstrate that his demotion occurred under circumstances that create an inference that the action was taken because of his age. One way Cruse can satisfy this burden is by showing that he was "replaced by a significantly younger person." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 727 (6th Cir. 2007). Cruse is correct in noting that he was replaced by Mitchell Asbury, who at the time was 31 years old. But Cruse fails to mention that this did not occur until six months after his demotion. Rather, in the immediate aftermath, Cruse's responsibilities were absorbed by Lanny Lyon, a Leader from another welding line shift. [DE 33-6, at 6.] These instant measures taken by Schneider Electric do not amount to the replacement of Cruse. *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement."). Accordingly, given the temporal gap between the demotion and the hiring of

Mitchell, the Court rejects Cruse's argument that the replacement gives rise to an inference of discrimination.

Alternatively, Cruse may satisfy his burden on the fourth element of a prima facie case of age discrimination by showing that he was treated less favorably than similarly situated individual outside the protected class. In the context of discriminatory discipline, such as a demotion, "similarly situated" means that "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Cruse fails to satisfy this burden. Apparently banking on his replacement argument, Cruse fails to adequately argue that similar situated Leaders outside of the protected class were treated differently. In sum, the Court finds that Cruse has failed to establish the fourth element of his age discrimination claims.

Even if the Court were to hold that Cruse made out a prima facie case for age discrimination, he cannot establish pretext on behalf of Schneider Electric. *See Webb*, 438 F. App'x at 454. Schneider Electric's proffered reason for Cruse's demotion was his unprofessional behavior at the October 8, 2015 meeting in Savard's office. This justification, unless rebuffed, is legitimate and nondiscriminatory.

Cruse argues that the parties heavily dispute what took place at the October 8, 2015 meeting, which according to Schneider Electric, precipitated Cruse's demotion. This disagreement, argues Cruse, can only be solved by a jury. The Court, however, disagrees. Determining who yelled at who during the October 8, 2015 meeting is not what is important here. Instead, the focus should be on how the decisionmaker, Lee Turner, evaluated the October 8, 2015 events.

To establish pretext, Cruse must show that Schneider Electric's tendered reason for his demotion either: (1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Cruse must produce "sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendants intentionally discriminated against him." *Johnson v. Kroger* Co., 319 F.3d 858, 866 (6th Cir. 2003).

Importantly, if an employer had an honest belief in the tendered reason for the adverse employment action, and that belief arose from "reasonable reliance" on the particularized facts before the decisionmaker, the asserted reason will not be considered pretextual, "even if it was erroneous." *Cardenas-Meade v. Pfizer, Inc.*, No. 3:09-CV-268, 2011 WL 6026893, at *7 (E.D. Tenn. Dec. 5, 2011), *aff'd*, 510 F. App'x 367 (6th Cir. 2013); *see* Sybrandt v. Home Depot, U.S.A., Inc., 560 F.3d 553, 559 (6th Cir. 2009) (quoting *Majewski v. Auto. Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."). Cruse's own speculation, unsupported by fact, is not enough to establish pretext. *Upshaw v. Ford Motor Corp.*, 576 F.3d 576, 587 (6th Cir. 2009). Nor is "mere conjecture that the employer's explanation is a pretext for discrimination a basis for denying summary judgment." *Id.*

Given this framework, Cruse's suggestion—that the dispute over the nature of the October 8, 2015 meeting guarantees him a trial—fails. Cruse has not presented any evidence that Lee Turner, the decisionmaker, was motivated by anything other than Cruse's alleged behavior at the October 8, 2015 meeting. Nothing in the record indicates that Turner even

knew of Cruise's hearing impairment, let alone harboring it as a reason to demote him. In addition, given the general consistency of the written witness statements reviewed by Turner, his reliance on them when making his decision was entirely "reasonable." *See Pfizer*, 2011 WL 6026893, at *7. As such, Cruse has failed to present evidence that raises a genuine issue of material fact as to whether Schneider Electric's proffered reason for demoting him was a pretext. Defendant Schneider Electric is entitled to summary judgment on Cruse's ADEA and KCRA claims.

## III. Cruse's Disability Discrimination Claims

Cruse also asserts that he was discriminated against on account of his vertigo and hearing impairment in contravention of the Americans with Disabilities Act ("ADA") and the Kentucky Civil Rights Act ("KCRA"). In its motion for summary judgement [DE 33], Defendant Schneider Electric argues that Cruse fails to make out the prima facie case for both claims. For reasons stated below, Cruse's disability discrimination claims must fail.

As a threshold matter, Schneider appears to argue that since the term "vertigo" did not appear in Cruse's original EEOC charge, he is precluded from raising vertigo-related arguments in this action. *See Johnson v. Cleveland City Sch. Dist.*, 344 Fed.Appx. 104, 109 (6th Cir. 2009) (holding that a district court's jurisdiction to hear cases arising under the ADA is "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination"). Instead, Schneider Electric would have the Court strictly limit its analysis to Cruse's alleged hearing problems. The Court, however, refuses to apply such a rigid interpretation.

Cruse indicated in his EEOC charge that he was "hard of hearing." [DE 33-3, at 140.] The Court finds that the scope of this alleged disability undoubtedly includes vertigo, which is a condition related to the ear and can result in hearing loss. It would be inequitable to penalize Cruse, a layperson, for not including specific medical terms in his EEOC Charge.

*Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) (citing *EEOC v. The Bailey Co., Inc.*, 563 F.2d 439, 447 (6th Cir.1977)) ("[C]ourts recognize that subsequent actions should not be restricted by the failure of a complainant to attach the correct legal conclusion to the EEOC claim, conform to procedural technicalities, or include 'the exact wording which might be required in a judicial pleading.'"). As such, the Court retains subject-matter jurisdiction over the vertigo-related claims.

To establish a prima facie case of unlawful discrimination under both the ADA and the KCRA, Cruse must show that: (1) he was disabled; (2) was otherwise qualified for the Leader position; (3) Schneider Electric knew of the disability; and (4) Schneider Electric took an adverse employment action against him. *Adkins v. Excel Mining, LLC*, 214 F. Supp. 3d 617, 623 (E.D. Ky. 2016). Because the KCRA mirrors the language of the ADA, courts interpret the KCRA consistent with the ADA. *Ashby v. Amscan, Inc.*, No. 3:15-CV-00643-GNS, 2017 WL 939324, at *2 (W.D. Ky. Mar. 9, 2017). Accordingly, the Court will address the claims as one.

There are two types of unlawful disability discrimination. The first kind is taking negative action against an employee because he has a disability. 42 U.S.C. § 12112(a). Second is the failure to provide an accommodation for an employee's disability. *Id.* § 12112(b)(5)(A); *see Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010). In the instant case, Cruse alleges both forms of disability discrimination.

Just because the plaintiff establishes his prima facie case, does not automatically mean that the employer's case is doomed. Instead, the burden shifts to the employer to articulate a legitimate, nondiscriminatory motive for firing the plaintiff. *See McDonnell Douglas,* 411 U.S. at 802; *Parry*, 236 F.3d at 310. If the employer produces that motive, the

burden then returns to the plaintiff to prove that the employer's stated motive is merely pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 804.

As to the first element of Cruse's negative action claim, that is, establishing a disability, Cruse claims to experience vertigo, along with a hearing impairment, that substantially limits his ability to hear, speak, and communicate. [DE 39, at 12.] To the contrary, Schneider Electric submits that Cruse's hearing impairment, his vertigo, or a mixture of both, do not substantially limit Cruse in his major life activities. Buttressing this claim the Company argues, is the fact that Cruse returned from his medical leave of absence in 2005 without any restrictions or requests for accommodation.

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). Therefore, to satisfy the first element of his disability discrimination claim, Cruse must assert that he suffers, has a record of, or is regarded as having a physical or mental impairment that completely or significantly restricts his ability to perform an activity that is of central importance to daily life. *See Sebest v. Campbell City Sch. Dist. Bd. of Educ.*, 94 Fed.Appx. 320, 326 (6th Cir. 2004) (examining the definition of "disability" under the ADA). Considering Cruse's 2005 vertigo diagnosis and alleged hearing loss, the Court finds, though barely, that Cruse has satisfied the disability element of his ADA and KCRA claims.

The second and third elements of Cruse's ADA and KCRA claims exactly mirror those of his age discrimination claims. That is, Cruse must show that he was otherwise qualified for the Leader position and suffered an adverse action. For the same reasons discussed *supra*, the Court finds that (1) Cruse has failed to show that he was qualified for the Leader position when he was demoted and (2) to the extent he was demoted, Cruse satisfies the adverse action element of the cause of action. Despite finding that Cruse fails to satisfy the qualification

prong of his ADA and KCRA claims, the Court will proceed to analyze the rest of the elements of Cruse's claims.

As to the fourth element, Cruse states that Schneider Electric either knew, or had reason to know of Cruse's disability. [DE 39, at 13.] Schneider Electric, on the other hand, argues that the decisionmaker, Lee Turner, was unaware of Cruse's alleged disability at the time he made the demotion decision. [DE 41, at 10.]

The key inquiry is whether the decisionmaker responsible for the adverse action was aware of the plaintiff's condition. *Phipps v. Accredo Health Grp., Inc.*, No. 215CV02101STACGC, 2016 WL 3448765, at *16 (W.D. Tenn. June 20, 2016). Without evidence that the decisionmaker was aware of the alleged disability, a plaintiff cannot satisfy the fourth element of an ADA claim. Here, Cruse does not argue that Lee Turner, the individual ultimately responsible for his demotion, was aware of the alleged disabilities. As a substitute, Cruse asserts that Turner should have been aware based on: (1) his medical leave of absence from ten years prior; (2) the Union's knowledge of the disability; and (3) and the brief mention of the alleged condition in one of Cruse's probation meetings. The Court is unwilling to take this constructive leap. The record fails to indicate that Turner knew about Cruse's condition. And, Cruse cannot create a genuine dispute of fact through "mere speculation, conjecture, or fantasy." *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004). Without such evidence, Cruse cannot establish his prima facie case of disability discrimination in the form of a negative action.

Next, Cruse asserts that Schneider Electric discriminated against him by failing to reasonably accommodate his alleged disabilities. To prevail on a disability discrimination claim of this variety, Cruse must show that he requested a reasonable accommodation for his known disability and that Schneider Electric failed to provide one. *See Gaines v. Runyon*, 107 F.3d 1171, 1175–76 (6th Cir. 1997); *see also Johnson v. Cleveland City Sch. Dist.*, 443

Fed.Appx. 974, 982–83 (6th Cir. 2011) (applying the *Gaines* framework to the ADA). If Cruse never made the request, his claim "must be dismissed." *Johnson*, 443 Fed.Appx. at 983.

Here, Cruse alleges that Schneider Electric knew of his hearing loss/vertigo by way of his medical leave of absence in 2005. Further, Cruse suggests that Pamela Macy (HR Representative), the Union, and certain Schneider Electric Supervisors were present on July 27, 2015 when he blamed his miscommunication with a manager on a hearing impairment. According to Cruse, despite being aware of his disabilities, Schneider Electric "refused to engage in good faith dialogue to accommodate [him]." [DE 1, at 2.]

Upon review, the Court first finds that Cruse's medical leave of absence from ten years prior does not give rise to an inference that an accommodation—or even a "good faith" dialogue on the subject—was necessary. This is especially true given that Cruse returned from his medical leave without any restrictions. Next, Cruse's brief mention of his hearing impairment in the July 2015 probation progress meeting does not amount to a request for an accommodation. Cruse actually asserted at this same meeting that he did not want to use his hearing as "a crutch." [DE 33-15, at 56.] Reasonable minds could infer from this statement that far from seeking an accommodation, Cruse instead wanted to be treated normally. Third, the Union's awareness of Cruse's hearing impairment cannot be imputed to Schneider Electric. And in any event, it certainly does not give rise to a duty on behalf of Schneider Electric to broach the subject with Cruse. If an accommodation was needed, Cruse should have directly notified his Supervising Manager, Susan Savard, or another member of Schneider Electric management. The record is void of any indication that he did so. As such, Cruse's failure-to-accommodate claim fails.

Even assuming that Cruse could make out his prima facie case, Schneider Electric presents a legitimate, nondiscriminatory motive for Cruse's demotion: his unprofessional behavior at the October 8, 2015 meeting. Cruse again alleges that these claims should

proceed because there is a genuine issue of material fact as to what took place at the October 8, 2015 meeting. As described *supra* in the Court's analysis of Cruse's age discrimination claims, the pertinent issue is not the exact sequence of events taking place at the meeting, but rather what management at Schneider Electric perceived them to be. Lee Turner, the decisionmaker, after an evaluation of multiple written statements, decided that the behavior of Cruse warranted a demotion. Further, the record does not give rise to an inference that Turner's decision was based in any manner on the age or alleged disability of Cruse. For these reasons, Cruse's disability discrimination claims must fail.

## **CONCLUSION**

It is HEREBY ORDERED that:

(1) Defendant Schneider Electric's motion for summary judgment [DE 33] is **Granted**.

(2) A judgment consistent with this Opinion and Order will be entered contemporaneously.

Dated November 5, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY